## Commonwealth v. van den Berg et al.

*C. William Kraft, William J. MacCarter, Jr., E. Leroy van Roden, Harold L. Ervin, Raymond E. Zickel, G. Harman Webb, Harold R. Gill, J. Paul MacElree, William A. Gray,* and *Cornelius C. O'Brien,* for motions.

*William B. McClenachan, Jr.,* district attorney, and *Henry G. Sweeney, Guy G. deFuria, William R. Toal, Karl W. Johnson, Joseph D. Calhoun, James Patterson* and *Albert Blumberg,* assistant district attorneys, contra.

SHULL, P. J., forty-third judicial district, specially presiding, February 25, 1941.—The indictments which are before us on defendants' motions to quash were returned to this court by the grand jury on January 29, 1941. . . .

Eleven of the 13 defendants in these indictments have filed written motions to quash, setting forth therein a multiplicity of reasons. Of the reasons advanced, practically all relate to all these indictments and these reasons raise six questions, which are as follows: . . .

2. Does the fact that Garrett Detweiler, Jr., was, on February 12, 1932, in action no. 1215, December term, 1931, adjudged to be a weakminded person, unable to take care of his estate and liable to dissipate and lose the same and to become the victim of designing persons, which proceeding was brought under the provisions of the Act of May 28, 1907, P. L. 292, which provides for the appointment of a guardian of the estate of weakminded persons, which decree has never been vacated or in any way set aside, per se, disqualify him from serving as a member of a grand jury in 1941 and require the quashing of indictments on which true bills were found by a grand jury of which he was the foreman? . . .

As to the second question, this raises the question of what is the subsequent status of a person regularly found by a court of common pleas of competent jurisdiction to be a weakminded person, unable to take care of his estate and liable to dissipate and lose the same and to be-

come the victim of designing persons. At the time of the entry of the decree, such decree was conclusive; but, as to the future status of such person, the decree is not conclusive. Authorities on this point are meager and in the brief time we have had to make a search we found no utterance of our appellate courts in point other than Hoffman's Estate, 209 Pa. 357, 360, which was cited in the Commonwealth's brief. Here the Supreme Court said:

"It is argued by appellees that it was admitted by the appellant that the testator was of sound mind, and the learned judge below based his opinion partly on the absence of a specific averment in appellant's petition, that the testator was incompetent to make a will at the date of the codicil. He accordingly treated the question as one of law only, whether the decree of weakmindedness was conclusive of incompetency. But there was in fact no admission by appellant of soundness of mind, and as already said the judge was probably misled by the appellant's extreme contention. The decree of weakness of mind was not conclusive as appellant argued, but it did raise a presumption which has not been met."

The vagaries of mental illness are a matter of common knowledge. One mentally ill today may be fully recovered and mentally sound next week. It is our view that the finding of the court in 1932 that Garrett Detweiler, Jr., was a weakminded person, there being no statute legally disqualifying such persons for jury service, does not, per se, disqualify him, nor is it conclusive as to his mental condition at the time he served as foreman of this grand jury in 1941; but, upon challenge as to his competency, the decree raises a presumption that he is a weakminded person; however, this presumption is rebuttable and the burden of rebutting it in this case has been fully met by the evidence presented to us by the Commonwealth, and the evidence presented established beyond quibble that during the time Garrett Detweiler, Jr., served as a grand juror he was a sober, intelligent, and judicious person.

Were this court to hold that the entry of a decree that a person is weakminded, or that he be mentally incompetent, legally established a continuing mental incompetency until such time as the decree be vacated and that the actual mental condition of such person should not be open to proof at any particular time, what a haven this would be for one bent on the commission of murder, arson, or burglary, to first have established mental incapacity, then commit the crime, and establish his innocence by a decree of court finding him mentally incompetent perhaps one, two, five, or ten years prior to the crime. . . .